Filed 1/20/15  P. v. Tyars CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TYRONE K. TYARS,<br><br>    Defendant and Appellant. | B252033<br><br>(Los Angeles County<br>Super. Ct. No. BA410374) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig Richman and David V. Herriford, Judges.  Affirmed.

Tyrone Tyars, in pro. per.; Jamie Lee Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

An information charged Tyrone Tyars with sale of a controlled substance, cocaine base (Health & Saf. Code, § 11352, subd. (a); count 1), possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 2), and possession of a controlled substance, heroin (Health & Saf. Code, § 11350, subd. (a); count 3). As to all three counts, the information alleged Tyars had sustained a prior serious or violent felony conviction under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d))[1] for attempted carjacking (§§ 215, 664), and had served a prior prison term (§ 667.5, subd. (b)) for the attempted carjacking conviction.

Evidence presented at trial showed, on April 21, 2013, Detectives Porfirio Montejano and Mel Vergara from the Los Angeles Police Department (LAPD) Gang and Narcotics Division were conducting undercover narcotics surveillance from an unmarked patrol car in an area of Los Angeles known to Detective Montejano as "a high narcotics area." Detective Montejano observed two men, later identified as Tyars and Gerson Calderon, engage in what appeared to be "[a] hand-to-hand narcotics transaction." Detective Montejano saw Calderon hand Tyars paper money, which Tyars counted and placed in his pocket. Tyars handed Calderon "some small items," which Calderon placed in a plastic bag hanging from the handlebars of a bicycle. Tyars and Calderon separated. Tyars walked north and Calderon proceeded south with the bicycle. The detectives followed Calderon and stopped him 7-10 minutes after the transaction with Tyars. The detectives searched the plastic bag hanging from the bicycle and recovered "four clear plastic wrapped off-white solid [items] resembling rock cocaine." These appeared to be the same small items Detective Montejano had seen Tyars hand Calderon. An LAPD criminalist later determined these items contained cocaine base.

Prior to following Calderon as he separated from Tyars, Detective Vergara called for back-up and asked Detective Armstrong and Officer Michael Hofmeyer to respond to the area and follow Tyars. After Calderon's arrest, Detective Vergara again contacted Detective Armstrong and Officer Hofmeyer and requested they arrest Tyars. Based on

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

2

the description of Tyars provided by Detective Vergara, Detective Armstrong and Officer Hofmeyer located Tyars inside a restaurant in the area. They placed Tyars in custody, handcuffed him, and searched him.[2] Detective Armstrong recovered "a clear plastic knotted baggy containing a green plant-like material resembling marijuana from [Tyars's] right sock."[3] Detectives Montejano and Vergara returned to the scene and confirmed the man in custody (Tyars) was the man who had engaged in the transaction with Calderon.

Tyars was placed in the backseat of an unmarked police vehicle with his hands handcuffed behind him. Officer Hofmeyer observed Tyars shifting his weight around and lifting his buttocks off the seat. Tyars was complaining the handcuffs were uncomfortable. Officer Hofmeyer warned Tyars he would be charged with an additional crime if officers found contraband in the vehicle. Prior to the start of his shift that day, Officer Hofmeyer searched the vehicle and did not find any contraband. He and Detective Armstrong had not placed any other suspects in the vehicle that day.

Detective Armstrong and Officer Hofmeyer drove to Tyars's residence where a search was conducted. Tyars remained in the backseat of the police vehicle. Officers did not recover anything at Tyars's home related to the narcotics investigation. Then Detective Armstrong and Officer Hofmeyer transported Tyars to the police station. After Tyars exited the police vehicle, Officer Hofmeyer searched the vehicle and "recovered a clear plastic knotted bindle containing a black tar substance resembling tar heroin, and . . . a clear, plastic bindle containing two additional clear plastic knotted bindles which each contained a crystalline substance resembling methamphetamine." Officer

---

[2] On April 25, 2013, prior to the preliminary hearing, Tyars filed a motion to suppress evidence under section 1538.5. At the preliminary hearing, defense counsel explained the motion to suppress was based on the argument the arresting officer did not have probable cause to arrest Tyars because that officer did not observe the alleged drug sale. The trial court denied the motion, stating the arresting officer had probable cause to stop Tyars. Moreover, the court noted Tyars was on parole and subject to search. At the preliminary hearing, Officer Hofmeyer testified, prior to the search, he or his partner asked Tyars if he was on parole and Tyars responded affirmatively.

[3] Tyars was not charged with possession of marijuana.

Hofmeyer found these items directly underneath the seat where Tyars had been sitting. The items were not there when Officer Hofmeyer conducted his earlier search of the vehicle. An LAPD criminalist later determined the items in the bindles were in fact heroin and methamphetamine.

At the police station, Detective Armstrong searched Tyars and recovered $1,063 from Tyars's person.[4] Officers did not find any drugs during a strip-search of Tyars.

The jury found Tyars guilty of the charged offenses. After a bench trial, the court found the prior conviction allegations set forth in the information (and listed above) to be true. After denying Tyars's motion to dismiss the prior strike conviction, the court sentenced Tyars to the middle term of four years for the sale of cocaine (count 1), doubled to eight years under the Three Strikes law. For each of the drug possession offenses (counts 2 & 3), the court imposed a two-year middle term to run concurrently with the term imposed on count 1. The court dismissed the prior prison term allegation pursuant to section 1385.

Tyars appealed. We appointed counsel to represent him on appeal. After examination of the record, counsel filed an opening brief raising no issues and asking this court to review the record independently pursuant to *People v. Wende* (1979) 25 Cal.3d 436, including the sealed reporter's transcript from the July 1, 2013 in camera hearing on Tyars's motion for discovery pursuant to *Pitchess v. Superior Court of Los Angeles County* (1974) 11 Cal.3d 531.[5] On May 1, 2014, we advised Tyars that he personally had 30 days to submit any contentions or issues he wished us to consider. We also directed

---

[4] At a bench trial on the District Attorney's forfeiture motion, held after the jury returned its verdicts in this matter, the trial court ordered the $63 found in Tyars's pocket forfeited, but returned the $1,000 found in Tyars's wallet to Tyars's girlfriend based on evidence indicating the $1,000 belonged to her.

[5] The trial court granted Tyars's *Pitchess* motion in part, ordering LAPD to produce for inspection records relating to complaints against Detective Armstrong and Officer Hofmeyer for false statements and/or planting evidence. At the in camera hearing, the court did not find any discoverable information.

4

his appointed counsel to send the record and opening brief to Tyars immediately.  On October 6, 2014, Tyars filed a 21-page supplemental brief and a six-page supporting declaration.[6]  Tyars raises numerous issues in his supplemental brief, but has demonstrated no error.

Tyars challenges the sufficiency of the evidence demonstrating reasonable suspicion for Detective Armstrong and Officer Hofmeyer to stop and search him.  It appears he is challenging the trial court's denial of his motion to suppress evidence, a ruling discussed above.  "The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment."  (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  Substantial evidence in the record demonstrates Detective Vergara advised Detective Armstrong and Officer Hofmeyer about the hand-to-hand transaction between Tyars and Calderon, provided a description of Tyars, and asked Armstrong and Hofmeyer to follow Tyars.  Detective Vergara subsequently advised Detective Armstrong and Officer Hofmeyer that Calderon was arrested with what appeared to be narcotics from the transaction.  Detective Vergara asked Armstrong and Vergara to arrest Tyars for sale of narcotics.  Detective Armstrong and Officer Hofmeyer located Tyars, placed him in custody, and searched him.  There is no search and seizure violation here.  The narcotics subsequently found in the back of the police vehicle were not "fruit of the poisonous tree" as Calderon contends.  Nor does the record support Tyars's contention the officers subsequently discovered Tyars's parole status and belatedly relied on that condition to

---

[6]  Tyars's declaration sets forth his version of the events on April 21, 2013, the date of the charged offenses.  We may not consider this declaration in reviewing the issues Tyars raises in his supplemental brief.  In this direct appeal, we may only consider the evidence contained in the appellate record.  Tyars's declaration was not presented as evidence at trial and it is outside the appellate record.

justify their search. At the time the officers stopped and searched Tyars, they were aware of reliable information indicating Tyars had just sold narcotics to Calderon.

Tyars also complains about evidence he would have liked to present at trial. He asserts the District Attorney violated his discovery rights by not providing the names of the officers who were present during the search of his home. He states he would have used this information to test the officers' credibility. He also states his rights under the Confrontation Clause were violated because Calderon did not testify at trial. Tyars cannot demonstrate any of this evidence would have helped his cause. The evidence presented at trial regarding his sale and possession of narcotics was strong.

Tyars contends the trial court abused its discretion by admitting evidence of uncharged conduct at trial—the bindle of marijuana recovered from his sock during the search conducted at the time he was placed in custody. The trial court held a hearing regarding the admission of this evidence outside the presence of the jury under Evidence Code section 402. Tyars cannot demonstrate the probative value of this evidence was substantially outweighed by the probability its admission would create a substantial danger of undue prejudice under Evidence Code section 352. Even if the trial court had erred in admitting this evidence, we would not reverse Tyars's convictions based on the strength of the other evidence supporting his convictions.

Finally, Tyars contends his trial counsel rendered ineffective assistance. He argues his trial counsel failed to investigate adequately Detective Montejano's background, training, experience and qualifications regarding hand-to-hand narcotics transactions. He also argues his trial counsel failed to investigate adequately the reason Calderon refused to testify on his behalf. "'To establish ineffective assistance of counsel, a [defendant] must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the [defendant] to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the [defendant]. [Citations.] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" (*In re Jones* (1996) 13 Cal.4th

6

552, 561.)  Tyars has not demonstrated his trial counsel could have presented additional evidence which would have resulted in an outcome more favorable to him.

We have examined the entire record, including the sealed reporter's transcript from the July 1, 2013 in camera hearing on Tyars's *Pitchess* motion, and are satisfied that Tyars's appellate counsel has fully complied with her responsibilities and that no arguable issues exist.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende*, *supra*, 25 Cal.3d at p. 441.)  Accordingly, we reject Tyars's contention his appellate counsel rendered ineffective assistance by failing to investigate the facts of his case and applicable law which would have allowed her to raise arguable issues on his behalf.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                    CHANEY, J.


We concur:



          ROTHSCHILD, P. J.



          BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7